# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THERESA SUE TUGMON, ) | |
| ) | |
| Plaintiff, ) | Case No. 13-CV-11-JED-FHM |
| v. ) | |
| ) | |
| INDEPENDENT SCHOOL DISTRICT #32 OF ) | |
| MAYES COUNTY, OKLAHOMA, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

**I.    Background**

Plaintiff, Theresa Sue Tugmon, asserts a retaliation claim under Title VII of the Civil Rights Act of 1964, against her former employer, Independent School District #32 of Mayes County ("School District"). She was a high school math teacher for the School District from 1996 until 2012. She also held positions of transportation director and bus driver. She alleges that, after she reported inappropriate conduct by the high school's principal, J.P. Hukill, he and the School District Superintendent, Arthur Schofield, retaliated against her.

The following facts are supported by the summary judgment record and are construed in favor of plaintiff, as is required at the summary judgment stage. On September 29, 2011, Stacy Thomas, a custodian at the high school, shared with Tugmon and other teachers several text messages that Hukill had sent to Thomas. The messages were not overtly sexual, but plainly suggested that Thomas should get together with Hukill outside of school. For example, Hukill texted:

"I bet you would be fun to hang out with."

"Maybe we can get together sometime if you can keep it on the downlow."

> "Whatever we do together or say to each other has to be our little secret you have to promise me. You deserve some good time and I can make that happen and more."

(Doc. 53-7). Thomas reported that she was uncomfortable in light of Hukill's texts and she was concerned that she would lose her job. Tugmon and other teachers suggested that Thomas report Hukill to the School Board or, if she felt threatened, to the police.

According to Tugmon, on October 27, 2011, her husband's coworker provided him with newspaper articles from the McAlester News Capital & Democrat, which referenced past allegations that Hukill had worked at other schools and had resigned under unfavorable circumstances.[1] Tugmon states that she provided the articles to Lynn Hershberger, who was then a School Board member and a police officer. Thereafter, on November 4, 2011, Hukill's wife called Tugmon on her cell phone. While Hukill himself was apparently listening to the call, his wife threatened to "destroy" Tugmon and stated that she had hired a lawyer to sue Tugmon. In an interview, Hukill indicated that, during the call, his wife told Tugmon that "*we're* going to, you know, take legal action against you if you try to slander [Hukill]...." (Doc. 53-30 at 12).

After the threat by Hukill's wife, Tugmon called a School Board member, who instructed her to report everything to Superintendent Schofield. On Monday, November 7, 2011, Tugmon met with Schofield and reported Hukill's sexual harassment of Thomas, including his text messages to her, and Tugmon reported the threatening phone call from Hukill's wife. The next

---

[1] The articles included allegations that Hukill had: used school computers to access pornography; paddled children in school hallways; threatened physical violence against staff members; bragged about sexual exploits; and engaged in other inappropriate behavior. The articles are the subject of a Motion in Limine (Doc. 40). The Court does not consider the articles to establish the proof of the matters asserted therein or as evidence of Hukill's character to show that he acted in conformity with the prior accusations. Instead, the articles are considered because plaintiff asserts that she provided them to assist in the investigation of Hukill's actions toward Thomas and, shortly after plaintiff provided the articles to the School District and reported Hukill's text messages, Hukill's wife threatened that she and Hukill would sue Tugmon, which is relevant to plaintiff's claim that Hukill had a retaliatory motive.

day, Hukill took plaintiff's students on a field trip, and they were not expected to return until the seventh hour, which is plaintiff's planning period. Hukill returned with the students a few minutes before the end of the seventh hour. That same day, Schofield sent Tugmon an email charging that she had left the school without giving required notice or arranging for coverage of her class. That incident was also included in a subsequent written admonishment.

One month after reporting Hukill's sexual harassment and his wife's threat, plaintiff received an Admonishment and Plan for Improvement, which indicated that her conduct "could lead to a recommendation for ... dismissal or non-reemployment." No action was taken against Hukill for the inappropriate texts to Thomas, and Tugmon alleges that she was subsequently subjected to other retaliatory conduct from Hukill, including false accusations of inappropriately touching a student, being "written up," called to the office, and reprimanded for relatively minor conduct common among other teachers (e.g., using the copier for personal documents, leaving the classroom to use the restroom). Hukill moved about the high school in a manner which, from Tugmon's perspective, reflected that he was routinely watching her movements, including to the bathroom, via the school's video equipment. She was threatened with another admonishment for allowing two students to take a diagnostic test in the computer classroom directly across from her classroom, although she could supervise them from her room. She was denied personal leave to attend a real estate closing, although she had requested leave the previous day and arranged for coverage of her class during that time.

Because she was the transportation director and a bus driver, she was often the first to arrive and the last to leave the school. After she reported Hukill's text messages to Schofield, Hukill began chaining the back door to the high school at the end of each school day, which required that, when she left the building each night and entered the building each morning, she

would have to walk by Hukill's office. She was frightened and intimidated by Hukill's conduct, such that Tugmon's husband began meeting her at the bus barn after the last bus run, to accompany her to return to her classroom to retrieve her homework, and he began driving her to work and escorting her to her classroom in the mornings.

When Schofield attempted to arrange a meeting with Hukill and Tugmon, Hukill refused to attend. Before she made the reports about Hukill's inappropriate text messages, Tugmon received a Teacher Evaluation on January 27, 2011 that rated her performance in every category but two as "Exceeds Criteria," and as "Meets Criteria" in the remaining two categories. In contrast, after her reports, on her May 2012 Teacher Evaluation, Hukill gave her zero "Exceeds Criteria" ratings and provided "Does Not Meet Criteria" ratings on numerous factors.

## II.     Summary Judgment Standards

A party may move for summary judgment on any claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255. The court may not weigh the evidence and may not credit the evidence of the

party seeking summary judgment and ignore evidence offered by the non-movant. *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

These same summary judgment standards apply to employment claims. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013). Thus, the Court must view all facts in the light most favorable to the plaintiff as the non-moving party and will "draw all reasonable inferences" in his favor. *Id.*; *Anderson*, 477 U.S. at 255. "'[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "When evaluating an employer's motives or reasons, 'motivation is itself a factual question.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999)).

### III. Discussion

#### A. Retaliation Claim

Under 42 U.S.C. § 2000e-3(a), it is "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [under Title VII]." Although the statute does not refer to such discrimination as "retaliation," the courts have so named claims under § 2000e-3(a). A plaintiff may establish retaliation by presenting direct evidence of discriminatory motivation or, in the absence of direct evidence, a plaintiff must establish a prima facie case under the *McDonnell Douglas* framework. *Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013).

To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action to be materially adverse, and (3) a causal connection existed between the protected activity and the challenged action. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). To establish that causal connection between the protected activity and the adverse employment action, plaintiff must present evidence of circumstances that justify an inference of retaliatory motive. *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (citation omitted). "If the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection." *Id.* The Supreme Court construes the causation requirement as ultimately requiring a showing that the employer's desire to retaliate was the but-for cause of the challenged employment action. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2528 (2013).

The plaintiff's burden at the prima facie stage requires only a "small amount of proof necessary to create an inference" of retaliation, by a preponderance of the evidence, and the burden is "not onerous." *See Smothers v. Solvay Chem., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014) (quoting *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005); *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191, 1197 (10th Cir. 2000)). Construing the evidence in plaintiff's favor, the Court concludes that plaintiff has established a prima facie case of retaliation. The School District does not dispute that Tugmon engaged in protected activity under Title VII when she reported the text messages from Hukill. (*See* Doc. 43 at 18).

In addition, plaintiff has presented significant evidence that Hukill took adverse actions against her as defined in retaliation law. Recovery under Title VII's retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment."

*Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," such that a reasonable worker might have been dissuaded from engaging in protected activity. *See id.* at 68. This is so because the retaliation provision aims to deter victims of discrimination from complaining to the EEOC, the courts, and their employers. *Id.* (citation omitted). The standard is stated "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69.

Tugmon has presented evidence of actions by the School District that a reasonable employee would consider materially adverse. For example, one month after reporting Hukill's inappropriate texts to Thomas, plaintiff received an Admonishment and Plan for Improvement, which indicated that her conduct "could lead to a recommendation for ... dismissal or non-reemployment." She had been employed by the School District for 15 years and had accrued retirement benefits, and a threat of potential dismissal or failure to reemploy her would have certainly been considered materially adverse. The negative Teacher Evaluation could also be considered materially adverse by a reasonable employee.

Based upon the very short time frame between her report to Schofield of Hukill's inappropriate text messages and the commencement of a string of negative consequences for plaintiff, Tugmon has established the prima facie element of causal connection between her report and the fallout that followed. *Ward*, 772 F.3d at 1203; *see also Trujillo v. PacifiCorp.*, 524 F.3d 1149, 1157, n.5 (summarizing and comparing Tenth Circuit authorities regarding temporal proximity and causation). The very day after her report, she was criticized by email for allegedly leaving her class unattended, although she had been advised that Hukill was taking the students on a field trip and they would not return until her planning period, the seventh hour,

when she is contractually permitted to be out of the classroom. Within a month of her report, she was given the Admonishment and Plan of Improvement. Tugmon has identified conduct throughout the Spring of 2012 from which it may be reasonably inferred that Hukill had a design to retaliate against her.

The School District has proffered legitimate, non-retaliatory reasons for the challenged adverse actions, including that the December 2011 Admonishment / Plan of Improvement was based on Tugmon's alleged failure to communicate with a math student's parent and her failure to follow directives from her supervisor. However, "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citation omitted). Thus, if "a plaintiff demonstrates that an employer's proffered reasons are 'unworthy of credence,' a jury may 'infer the ultimate fact of discrimination' or retaliation." *Smothers*, 740 F.3d at 546 (quoting *Swackhammer v. Spring/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007)).

The evidence in this case presents a genuine dispute of material fact regarding pretext. For each instance of alleged misconduct for which Hukill or Schofield cited her, Tugmon provided evidence from which it could be inferred that Hukill's accusations were false, exaggerated, or targeted to retaliate against plaintiff. By way of specific example, although she was placed on the Admonishment / Plan of Improvement, based supposedly on a failure to

communicate with a parent as directed by Hukill, plaintiff established that the other parent, who was also a teacher, had welcomed communication by text message, and Tugmon had timely communicated by text message when she was out of the office. In addition, Tugmon provided significant evidence of her communications with the parent about the student. Also, Hukill's statement in an interview that his wife had threatened Tugmon on the phone, stating that "we're going to" sue Tugmon for continuing allegations against Hukill is evidence of retaliatory motive by Hukill. Hukill also made statements in another interview from which it could be inferred that, for as long as he remained the high school Principal, he would continue to investigate plaintiff's conduct in relation to Thomas's allegations.

Genuine disputes of fact preclude summary judgment on plaintiff's retaliation claim, and the School District's motion for summary judgment is **denied** on that claim.

### B. Punitive Damages

The School District has moved for summary judgment on Tugmon's claim for punitive damages. Punitive damages are not recoverable against "a government, government agency or political subdivision" for a violation of Title VII. *See* 42 U.S.C. § 1981a(b)(1) (excepting governmental entities from the general punitive damages provision). Tugmon agrees, and indicates that she is not now seeking punitive damages.

## IV. Conclusion

The School District's Motion for Summary Judgment (Doc. 43) is **denied** with respect to Tugmon's Title VII retaliation claim. The motion is **granted** to the extent that punitive damages are not recoverable against the School District under Title VII.

SO ORDERED this 31st day of March, 2015.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

9